UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:21-CR-254-SDJ |
| | § | |
| CYNTHIA SANCHEZ (4) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cynthia Sanchez's Motion to Review and Appeal Detention Order. (Dkt. #87). The Government filed a response. (Dkt. #98). The Court, having considered the motion, the Government's response, the record, and the applicable law, **DENIES** the motion and the relief requested.

### I. BACKGROUND

Sanchez is part of a multi-defendant criminal case that arises from a federal investigation of a large-scale drug-trafficking conspiracy. The organization involved in the conspiracy imported methamphetamine from Mexico and has contacts in Mexico, North Texas, and New Jersey. The co-conspirators also operated a storage warehouse in North Texas where they kept over 1,000 kilograms of liquid methamphetamine stored in paint buckets.

On September 14, 2021, while surveilling individuals connected to the conspiracy, federal agents observed two cars—a truck and a van—parked at the Town East Mall in Mesquite, Texas. Sanchez was seated in the passenger seat of the truck. The agents observed what they believed to be a drug transaction between the vehicles. After the truck left the mall, federal investigators coordinated with local law

1

enforcement to conduct a traffic stop. Local law enforcement searched the truck because it smelled of marijuana. The search produced a bag of marijuana and approximately one kilogram of methamphetamine, both of which were recovered from the floorboard near Sanchez's seat.

Sanchez, who was on bond for separate charges for possession of a controlled substance and assault, provided conflicting reports regarding the drugs upon arrest. First, she stated that she owed a drug-related debt to "Ivan," an individual in Mexico who told her to get the drugs on his behalf, and she stated that she complied out of fear for her life. She later said she purchased the drugs from Ivan and intended to sell the drugs to pay her attorney for representing her for the previous possession charge.

Sanchez was arrested and is now charged with conspiracy to possess with the intent to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Sanchez appeared for a detention hearing in front of a magistrate judge. At the hearing, Special Agent Christopher Roberts testified on behalf of Homeland Security Investigations regarding the details of the alleged offense and the investigation leading to Sanchez's arrest.

The magistrate judge concluded that Sanchez did not rebut the applicable statutory presumption that she is a flight risk and a danger to the community. The magistrate judge further concluded that the Government proved by clear and convincing evidence that no conditions of release imposed on Sanchez will reasonably assure the safety of any other person and the community and that the Government

proved by a preponderance of the evidence that no conditions of release will reasonably assure Sanchez's appearance as required. (Dkt. #66 at 2–3). Based on these conclusions, the magistrate judge entered an order detaining Sanchez pending trial. Four months later, Sanchez filed a two-page motion requesting that the Court vacate or amend the detention order.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge may seek review of the detention order in district court. The district court reviews the magistrate judge's order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). Accordingly, the Court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judicial officer may order a defendant detained pending trial only upon satisfying two prerequisites. First, the officer must hold a hearing pursuant to a circumstance listed in 18 U.S.C. § 3142(f). *See United States v. Byrd*, 969 F.2d 106, 109–10 (5th Cir. 1992). Second, after a hearing, the officer must determine whether the United States has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance

3

of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f)(2); *see also Rueben*, 974 F.2d at 586 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required." (citation omitted)). Section 3142(g) provides that a court shall consider four factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). The rebuttable presumption arises upon a finding of probable cause to believe that the defendant committed an offense subject to a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 18 U.S.C. § 3142(e)(3)(A); *see also Rueben*, 974 F.2d at 586. Probable cause exists when offenses under the Controlled Substances Act are charged in an indictment. *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987).

Section 3142(e)'s rebuttable presumption "shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion," which

4

remains with the Government. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *Fortna*, 769 F.2d at 251; *see also Hare*, 873 F.2d at 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."). If the defendant does not present evidence sufficient to rebut the presumption, the Court must still review the Section 3142(g) factors. *See United States v. Jackson*, 845 F.2d 1262, 1265 (5th Cir. 1988) (noting that the language of Section 3142(g) "*mandates* district court review of certain factors" (emphasis added)). As the Fifth Circuit has explained, the statute thus creates "an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." *Hare*, 873 F.2d at 799.

If the two prerequisites are not satisfied, a judicial officer may not order a criminal defendant detained pending trial. *See United States v. Okhumale*, 813 F.App'x 936, 939 (5th Cir. 2020) (per curiam) (reaffirming that pretrial detention requires "the presence of one of the circumstances outlined in § 3142(f) *and* a determination under § 3142(e) that . . . no conditions imposed could either assure the appearance of the defendant or the safety of the defendant and community" (citing *Byrd*, 969 F.2d at 109–10)).

5

## III. DISCUSSION

### A. Sanchez's Detention Hearing and Request for De Novo Hearing

The requirement that a judicial officer hold a hearing pursuant to 18 U.S.C. § 3142(f) prior to ordering a defendant detained is satisfied by Sanchez's hearing before the magistrate judge. *See* 18 U.S.C. § 3142(f)(1) (providing that a judicial officer must hold a hearing to determine whether any combination of conditions will reasonably assure the defendant's appearance and the public safety where, inter alia, the Government moves for detention and the defendant is charged with an offense for which the maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act). Here, the Government moved for detention before the magistrate judge, who is a judicial officer. *See* 18 U.S.C. § 3156(a)(1). Sanchez is charged with a crime that has a maximum term of imprisonment of ten years or more prescribed in the Controlled Substances Act. *See* (Dkt. #108); 21 U.S.C. §§ 841(b)(1)(A), 846. The detention hearing before the magistrate judge was therefore proper under Section 3142(f)(1)(C) and fulfills the detention hearing requirement in this case.

In her motion requesting revocation of the magistrate judge's detention order, Sanchez includes a request for a hearing. (Dkt. #87 at 2). The Court, having reviewed the audio recording of the detention hearing held before the magistrate judge, Pretrial Services' Report, the magistrate judge's order, Sanchez's motion, and the Government's response, concludes that there is no need for a hearing on the motion. Sanchez provides little argument and no evidence in her motion to support the assertion that the magistrate judge's detention order should be revoked, and the

Government's arguments are clearly articulated in its briefing. The Court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *Fortna*, 769 F.2d at 250; *see also United States v. Hensler*, 18 F.3d 936, 1994 WL 83436, at *2 (5th Cir. 1994) (per curiam) ("The district court has discretion in determining whether to conduct a supplementary evidentiary hearing as part of its de novo review" and "the discretion to conduct its de novo review by examining the pleadings and the evidence which was developed before the magistrate judge and then adopting the magistrate judge's pretrial detention order." (citations omitted)). Sanchez's alternative request for a hearing on the motion is therefore denied. *See United States v. Ashley*, 850 F.App'x 270, 271 (5th Cir. 2021) ("[T]he district court did not err by not conducting a *de novo* detention hearing before adopting the magistrate judge's detention order.").

## B. Timeliness of Revocation Motion

At the outset, the Government asserts that Sanchez's motion is untimely because it was not filed within fourteen days of the magistrate judge's detention order, as the Government avers is required by Federal Rule of Criminal Procedure 59(a). (Dkt. #98). There is certainly support for this argument. *See, e.g., United States v. Pineda-Diaz*, No. 3:20-CR-004-S, 2020 WL 2747421, at *1 (N.D. Tex. May 26, 2020) ("A defendant must seek review of a magistrate judge's detention order within fourteen days as prescribed by FED. R. CRIM. P. 59(a), or the 'right to review is waived, and review by the district court following such a waiver is discretionary and not a matter of right.'" (quoting *United States v. Watts*, No. 3:09-CR-249-D (09),

7

2010 WL 11452009, at *1 (N.D. Tex. June 25, 2010))). However, the Fifth Circuit has not addressed the question of whether Rule 59's fourteen-day objection period applies to motions filed under 18 U.S.C. § 3145.[1] *See* FED. R. CRIM. P. 59(a), (b)(2); *Ashley*, 850 F.App'x at 271 (affirming district court's holding without addressing timeliness where district court applied the fourteen-day rule, concluded that the defendant's motion was timely, and ordered the defendant detained because he posed a flight risk and danger to the community). And 18 U.S.C. § 3145 does not set a time limit for a defendant to file a motion for revocation or amendment of a magistrate judge's detention order. The Court has therefore conducted a de novo review as set forth below.

**C. Merits of Revocation Motion**

The Government contends that Sanchez has not rebutted the presumption that she is a flight risk and a danger to the community and that, even if she did rebut the presumption, the Section 3142(g) factors still weigh in favor of detention.

Having independently considered the record and the Section 3142(g) factors, as detailed below, the Court concludes that Sanchez has not rebutted the presumption, that she presents a flight risk and a danger to the community, and that

---

[1] Based on the Court's research, it appears only one circuit court has addressed this issue. *See United States v. Doby*, 928 F.3d 1199, 1204–08 (10th Cir. 2019). In *Doby*, the Tenth Circuit considered the interplay of Rule 59(a), 18 U.S.C. § 3145, and 28 U.S.C. § 636, which addresses powers of and assignments to magistrate judges. *Id.* at 1202. The Tenth Circuit explained that Rule 59(a)'s operation is premised upon the referral of a matter to a magistrate judge under Section 636(b). *Id.* at 1204–06. By contrast, magistrate judges have the inherent power to issue detention orders pursuant to Section 636(a). *See id.* at 1204–05; 28 U.S.C. § 636(a)(1)(2). As such, the Tenth Circuit found that Rule 59(a) is inapplicable in the context of pretrial release and detention orders because "only those powers and duties eligible for referral under § 636(b) are subject to Rule 59(a)." *Doby*, 928 F.3d at 1204.

there are no conditions of release that would adequately address these risks. Therefore, Sanchez's motion for revocation of the magistrate judge's detention order must be denied, and she must be detained pending trial.

### i. Section 3142(e)'s rebuttable presumption applies and has not been rebutted.

The rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community applies in this case. Sanchez has been indicted for alleged violations of 21 U.S.C. §§ 846 and 841(a)(1). Under the Controlled Substances Act, Sanchez faces imprisonment of not less than ten years and not more than life. *See* 21 U.S.C. §§ 841(b)(1)(A), 846.

The indictment provides probable cause to believe that Sanchez committed the charged offense. *See Trosper*, 809 F.2d at 1110 ("[T]he presumption against pretrial release arises when drug crimes [under the Controlled Substances Act] are charged in the indictment."). Further, the testimony of Special Agent Roberts supports the finding of probable cause. *See Fortna*, 769 F.2d at 252 (finding probable cause while relying in part on the affidavit of an investigating agent). Therefore, under 18 U.S.C. § 3142(e)(3)(A), the presumption applies, and Sanchez was required to produce rebutting evidence.

To rebut the presumption, Sanchez bears "only the burden of producing rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798. However, Sanchez has not produced evidence sufficient to rebut either the presumption that no combination of conditions will reasonably ensure her appearance or the presumption

that no combination of conditions will reasonably ensure the public safety. Sanchez failed to produce sufficient rebutting evidence during the proceedings before the magistrate judge, and she produced no evidence in support of her present motion. *See* (Dkt. #87).

### a. Appearance at trial and risk of flight

Sanchez has not presented evidence tending to rebut the presumption that she is a flight risk. A significant factor in this determination is the evidence before the Court that, when she was arrested for the instant offense, Sanchez had already failed to comply with bond conditions for her previously pending charges of possession of a controlled substance and assault causing bodily injury to a family member. Pretrial Services contacted the bond holder for the prior pending charges, and they reported that although Sanchez is required to report twice monthly, as of September 2021, she had not contacted the bonding agent since June 11, 2021. (Dkt. #45 at 5). Sanchez's repeated failure to report casts significant doubt on the proposition that she will appear at trial and as otherwise required if released.

Additionally, Sanchez admitted ties to a drug supplier in Mexico when she told officers following her arrest that she owed a drug-related debt to a man named Ivan who resides in Mexico. That connection was compounded by Sanchez's later statement that she purchased the drugs from Ivan and intended to sell them.

To be sure, Sanchez has ties to the Dallas community: her seven children live in the area, as do other family members including her mother and siblings. She has lived in Dallas for nearly her entire life, and she is a United States citizen. However, this evidence is insufficient to rebut the presumption that no combination of

conditions will reasonably assure Sanchez's appearance at trial. Notably, Sanchez reported only four children to Pretrial Services. Sanchez's former sister-in-law, Estella Zuniga, reported Sanchez's additional children. Further, some of Sanchez's children's paternal grandparents live in Mexico, and she traveled there two years ago for a visit.

Zuniga has offered to serve as Sanchez's third-party custodian should the Court order Sanchez released pending trial. At the hearing before the magistrate, Zuniga testified that she left her job to care for Sanchez's three young children—ages six, eight, and ten—since Sanchez's arrest. Zuniga also testified that she is willing to live with Sanchez if Sanchez is released and that she would report any violations of Sanchez's release conditions to Pretrial Services. Zuniga caring for Sanchez's children and her offer to serve as a third-party custodian are commendable, but the record suggests that Zuniga is not well positioned to serve as third-party custodian for Sanchez. Specifically, Zuniga testified that prior to Sanchez's arrest, she had not seen Sanchez for more than six months despite living twenty minutes apart, though she had kept in touch with Sanchez's nineteen-year-old son, who is a codefendant in this case. Further, Zuniga did not know about Sanchez's 2020 possession and assault charges. Zuniga also testified that she does not know about "Ivan."

Sanchez's failure to comply with existing bonds, failure to be forthcoming with Pretrial Services regarding her children, and her ties to Mexico reinforce the presumption. And though Zuniga is caring for Sanchez's young children and offered to serve as a third-party custodian, the lengthy period between Zuniga's and

Sanchez's contact prior to the arrest, coupled with Zuniga's lack of knowledge of the prior charges against Sanchez, create a great deal of concern. The presumption that no combination of conditions will reasonably assure Sanchez's appearance at trial has not been rebutted and remains in this case.

### b. Danger to the public

Sanchez has similarly failed to rebut the presumption that she would be a danger to the community if released. Sanchez has not produced any evidence indicating that she would refrain from involvement in drug trafficking were she to be released. *See Rueben*, 974 F.2d at 587 (determining that defendants failed to rebut the presumption where they presented "absolutely no evidence whatsoever" that they would refrain from continuing to traffic drugs). Sanchez's admission following her arrest that she owed a drug-related debt and that she had intended to sell drugs reinforces the presumption. So too does the fact that Sanchez was arrested in this case while on bond for a separate drug-related charge. Sanchez's several previous arrests, including arrests for possession of a controlled substance, assault causing bodily injury to a family member, and driving while intoxicated with a child under the age of fifteen, among others, also reinforce the presumption. Without any evidence that Sanchez would refrain from her involvement in drug trafficking, the presumption that she would present a danger to the community if released has not been rebutted.

### ii. Application of the Section 3142(g) factors confirms that Sanchez must be detained pending trial.

Having determined that the presumption applies and that Sanchez has failed to produce sufficient evidence to rebut the presumption, the Court must now consider the Section 3142(g) factors to answer the ultimate question of whether the Government met its burden of proof. *See Jackson*, 845 F.2d at 1265. The Court finds that, having reviewed the Section 3142(g) factors in light of the presumption, the Government proved by a preponderance of the evidence that no combination of release conditions could reasonably assure Sanchez's appearance at trial and further proved by clear and convincing evidence that no such conditions could reasonably assure the safety of the public pending trial. For these reasons, Sanchez must remain detained pending trial.

#### a. Nature and circumstances of the charged offense

Sanchez is charged with a serious offense—conspiracy to possess with the intent to manufacture and distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and fifty grams or more of methamphetamine (actual). If convicted, Sanchez faces a minimum of ten years and a maximum of life in prison. *See* 21 U.S.C. §§ 841(b)(1)(A), 846. The severity of Sanchez's potential sentence underscores the seriousness of her charged offense. *See United States v. Zhang Xiao Dong*, No. 3:17-CR-546-L, 2017 WL 5629513, at *3 (N.D. Tex. Nov. 22, 2017) (concluding that possible prison sentence of forty-six to fifty-seven months presented motive to flee); *United States v. Almasri*, No. H-07-155, 2007 WL 2964780, at *1 (S.D. Tex. Oct. 10, 2007) (concluding that a defendant's

potential sentence weighed in favor of detention when the defendant faced a *maximum* sentence of ten years and the possibility of a higher sentence if the defendant received consecutive penalties). Sanchez is also connected to a large-scale methamphetamine conspiracy. This factor therefore weighs in favor of detention.

### b. Weight of the evidence

The Court must also consider the weight of the evidence against Sanchez, although this factor is considered "to be of least importance in the detention determination." *United States v. Stanford*, 630 F.Supp.2d 751, 755 (S.D. Tex. 2009) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F.Supp. 385, 393 (W.D. La. 1997)).

As explained above, Sanchez was arrested in connection with a federal investigation of a large-scale methamphetamine conspiracy. While surveilling other individuals connected to the conspiracy, federal agents observed that Sanchez was seated in the passenger seat of a truck in a mall parking lot and observed the truck's passenger door quickly open toward a van to conduct what Agent Roberts testified officers believed to be a drug transaction. The subsequent search of the vehicle Sanchez was in produced a bag of marijuana and approximately one kilogram of methamphetamine, both of which were recovered from the floorboard near Sanchez's seat.

Upon arrest, Sanchez made contradictory statements regarding "Ivan" and her connection to the drugs. Regardless, she directly linked herself to a supplier in Mexico. The weight of the evidence against Sanchez is strong: federal agents witnessed her engaged in a suspected drug transaction, officers found a kilogram of

14

methamphetamine near Sanchez's seat, and Sanchez tied herself to a supplier in Mexico. The strength of the Government's evidence of Sanchez's participation in a serious crime therefore also weighs in favor of detention.

### c. History and characteristics of the defendant

The Court must also consider Sanchez's history and characteristics. Relevant history and characteristics include "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

Sanchez's history and characteristics weigh in favor of detention. Sanchez has a pending drug charge and a pending charge for assault causing bodily injury to a family member. Following her arrest on these charges, she has failed to appear for required check-ins with her bond provider while on release. Sanchez also has additional previous arrests, including: a 2004 arrest for (1) aggravated assault with a deadly weapon and (2) "disorderly conduct discharge or display firearm" (Sanchez was convicted of the latter crime and sentenced to twenty-one days' imprisonment); and a 2009 arrest for (1) driving while intoxicated with a child under fifteen years of age and (2) harassment of a public servant (Sanchez was convicted of the former charge and sentenced to five years of probation, which she completed). (Dkt. #45 at 4–5). This history serves as strong evidence that no combination of conditions would reasonably assure the safety of the public. Given the nature of her repeated offenses, Sanchez is plainly a danger to herself, her children, and others.

Further, the fact that Sanchez was arrested for this drug charge while on bail for a separate drug offense suggests that she is unlikely to discontinue her involvement in the drug business if released. *See Rueben*, 974 F.2d at 586 ("[T]he risk of continued narcotics trafficking on bail does constitute a risk to the community . . . ." (citation omitted)). Sanchez's failure to appear for her bond check-ins for her prior pending charges heightens the risk that she will fail to appear for her proceedings in this case. And Sanchez's non-compliance strongly suggests that she would be unlikely to abide by her conditions of release generally if the Court were to release her pending trial.

Further, although Sanchez has family ties in the community, these ties are connected with a slew of criminal activity: her nineteen-year-old son is a codefendant in this case; her fifteen-year-old son is in custody for a murder charge; and the father of her three youngest children, with whom she is no longer in a relationship, has been in prison for seven years. (Dkt. #45 at 3). Moreover, Sanchez has not had contact with her siblings since 2020. (Dkt. #45 at 2). Her family ties to Mexico, though somewhat attenuated, along with her ties to "Ivan," also raise concern that she has contacts that could assist her in fleeing prosecution.

The Court is also concerned by certain behavior Sanchez has exhibited since being arrested—including her conflicting statements about "Ivan" and her apparent misrepresentations to Pretrial Services regarding the number of children she has—which cast doubt on her character and suggest that she is likely to attempt to obstruct justice. *See United States v. Djoko*, No. CR19-0146-JCC, 2019 WL 4849537, at *4

(W.D. Wash. Oct. 1, 2019) (explaining that evidence of the defendant's "willingness to destroy evidence and lie to authorities creates a serious risk that he may attempt to obstruct justice in some other way"); *United States v. Fattah*, 351 F.Supp.3d 1133, 1139–40 (N.D. Ill. 2019) (noting that "prior lies and deceptions to authorities are factors that can be considered on the question of bond" and that "[p]ast behavior is often prologue and is a proper predictive criterion to be employed in determining whether a person will abide by his or her present promises").

Taken together, Sanchez's history and characteristics undermine any assertion that Sanchez would discontinue her drug-related activity if released, putting her children and the public in danger. Her history and characteristics also make it likely that she will not appear as required for proceedings in this case. This factor therefore weighs strongly in favor of detention.

### d. Nature and seriousness of the danger posed by the defendant

The testimony produced at the hearing before the magistrate judge, along with reports of what Sanchez told officers upon her arrest, suggest that Sanchez is a participant in a large-scale, international methamphetamine distribution organization that imports drugs to Texas and New Jersey, and that Sanchez has direct ties to a supplier in Mexico. The large amount of methamphetamine found in Sanchez's possession, one kilogram, is clear evidence of distribution. In addition to the danger that such drug activity poses by itself, Sanchez appears to be a repeat drug offender. There is no question that these actions present significant danger to the public. *See Hare*, 873 F.2d at 798–99 ("[D]rug offenders pose a special risk of . . . dangerousness to society."). And the Court is convinced that no combination of

17

conditions would prevent Sanchez from continuing to engage in dangerous criminal activity if released, particularly given her apparent willingness to commit this drug offense while on bond for another drug offense. This final factor also weighs heavily in favor of detention.

*   *   *

In sum, the Court concludes that the Section 3142(g) factors, when considered with the unrebutted statutory presumption that Sanchez is a flight risk and a danger to the public, indicate that there is no combination of release conditions that would reasonably assure the safety of the community and Sanchez's appearance for further proceedings. Sanchez's revocation motion must therefore be denied.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the relief sought in Defendant Cynthia Sanchez's Motion to Review and Appeal Detention Order, (Dkt. #87), is **DENIED**. Defendant Cynthia Sanchez shall remain in custody pending trial.

**So ORDERED and SIGNED this 15th day of June, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE